[No. 16718-9-I.   Division One.   May 16, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL THOMAS HARTLEY, *Appellant.*

*Dori Jones* and *Marc Lampson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Senior Appellate Attorney,* and *Brett C. Trowbridge, Deputy,* for respondent.

WEBSTER, J.—Michael Thomas Hartley, appealing his convictions for second degree burglary and taking a motor vehicle without permission, contends that the court erred in failing to grant a continuance and in erroneously computing his prior offender's score. We affirm.

## FACTS

Hartley was charged by information with both burglary in the second degree and taking and riding a motor vehicle without the owner's permission. At a pretrial hearing, Hartley requested the court to order the State to produce Diane McEachran, Hartley's codefendant, or her last known address, or her probation officer. Hartley claimed that McEachran would testify that he was not the man with her on the day in question.

The day before trial, Hartley asked the court to grant a continuance and to subpoena McEachran. The court issued a subpoena but did not grant the continuance.

Trial began on Friday, May 10. The court indicated that jury selection would not begin until Monday, May 13, which provided defense counsel with Friday afternoon and the weekend to drive to Portland, Oregon, to search for McEachran. No request was made for an out–of–state subpoena pursuant to RCW 10.55.060. On Monday, May 13, Hartley's counsel reported his inability to locate McEachran. He asked for the issuance of a material witness warrant and for a continuance. Both requests were denied.

At trial, the State's evidence showed that Hartley and McEachran burglarized the residence of Charles Cromwell. They arrived in a car which they had previously taken without the owner's permission. When Cromwell returned home, Hartley and McEachran fled in the car and shortly thereafter, they were involved in an automobile accident. Hartley ran from the scene before police arrived. Cromwell identified Hartley as the person who drove away with some of his roommate's belongings in the car. Two other witnesses who were working at the intersection where the accident occurred identified Hartley as the driver of the stolen vehicle. A King County detective showed a photo montage to all three witnesses; each picked Hartley as the driver of the stolen vehicle. McEachran was apprehended at the scene. Based upon this evidence, Hartley was found guilty.

Hartley was sentenced on June 20, 1985. He argued that the trial court erroneously calculated his offender score as 10 for purposes of his burglary conviction. The court was not convinced by Hartley's argument that his 1972 felon in possession conviction was served concurrently with his 1977, 1980, and 1981 convictions for purposes of former RCW 9.94A.360(11). He also argued that the first degree burglary offense was actually an "attempt to till tap." He further argued that he was denied an evidentiary hearing to determine sentencing matters.

MOTION FOR CONTINUANCE

A trial court's ruling on a motion for continuance will not be disturbed on appeal absent manifest abuse of discretion. *State v. Bebb,* 44 Wn. App. 803, 812, 723 P.2d 512 (1986), *aff'd,* 108 Wn.2d 515, 740 P.2d 829 (1987); *State v. Campbell,* 103 Wn.2d 1, 14, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985). "Discretion is abused only where no reasonable man would take the view adopted by the trial court." *State v. Sutherland,* 3 Wn. App. 20, 21, 472 P.2d 584 (1970).

Although there are no mechanical tests to determine whether such a denial deprives an individual of a fair trial, the totality of circumstances must be examined with particular attention paid to the reasons presented to the trial judge at the time the request is denied. *State v. Kelly,* 32 Wn. App. 112, 645 P.2d 1146, *review denied,* 97 Wn.2d 1037 (1982).

■ We conclude that the court did not abuse its discretion in denying the motion for a continuance. Defense counsel did not exercise due diligence to secure the attendance of McEachran. Although defense counsel made pretrial motions regarding McEachran, he did not request a subpoena until the day before trial. He also failed to interview her or confirm that she was willing to testify.

> Due diligence must be exercised to secure the attendance of a witness, and that due diligence includes the issuance of a subpoena and the taking of necessary steps to enforce attendance. The defense counsel did not show that he had made timely use of the legal mechanisms available to compel the witness' presence in court.

(Citation omitted.) *State v. Toliver,* 6 Wn. App. 531, 533, 494 P.2d 514 (1972). "The failure to cause a subpoena to issue clearly constitutes such a lack of diligence as to justify the denial of a motion for a continuance." *State v. Smith,* 56 Wn.2d 368, 370, 353 P.2d 155 (1960). In fact, the trial court noted that defense counsel did not make timely use of legal mechanisms available to compel McEachran's attendance in court when it stated: "[T]here is a great deal of

unaccountable delay including most particularly failure to bring this up to me so I had time to do something about it when we had several days in advance of trial."

In *Dearinger v. United States,* 468 F.2d 1032, 1035 (9th Cir. 1972), the court held that when a witness is unavailable, a motion for a continuance presents a far different question than where a witness may be obtained with little delay. McEachran left a message for defense counsel that she did not want to testify and did not want to have anything to do with Hartley. Moreover, even if McEachran had testified, she would have had little credibility. The trial court stated: "[W]ith three eyewitnesses . . . it isn't very likely that they would believe the testimony of an accomplice who said, 'Oh, no, it was someone else who was with me.' Particularly when the defendant had a letter [allegedly exculpating himself but lost it]."

We also agree with the court's handling of Hartley's request for a material witness warrant. The court stated that the record did not contain enough information to justify such a drastic step. It further said:

> If there was some evidence . . . that she is in fact a material witness, and would offer something that conceivably could affect the outcome of the trial, the Court would be inclined, but at this stage of the proceeding, I would hesitate and would find that sufficient grounds don't exist for the Court to issue a material witness warrant.

*See State v. Schmidt,* 141 Wash. 660, 252 P. 118 (1927) (continuance to secure an absent witness was denied where attorney had no direct information regarding witness' testimony and where attorney could have been more diligent).

## OUT–OF–STATE WITNESS

Hartley argues that the trial court erred in failing to secure McEachran's attendance pursuant to the statutory provision for securing the attendance of a witness from another state, RCW 10.55.060. Hartley may not raise this issue for the first time on appeal. RAP 2.5(a); *State v.*

*Smith,* 104 Wn.2d 497, 707 P.2d 1306 (1985). Therefore, we decline to review this alleged error.

OFFENDER SCORE CALCULATION

Hartley argues that his 1972 felon in possession conviction ran concurrently with his 1977, 1980, and 1981 convictions. He further claims that because he simultaneously served overlapping prison terms for each conviction, these sentences are concurrent and should be counted as one offense for purposes of his offender score under the Sentencing Reform Act of 1981 (SRA). The controlling statute is former RCW 9.94A.360(11).[1] It states:

> In the case of multiple prior convictions for the purpose of computing the offender score, count all adult convictions served concurrently as one offense . . . The conviction for the offense that yields the highest offender score is used.

Hartley made a similar argument in *State v. Hartley,* 41 Wn. App. 669, 705 P.2d 821, *review denied,* 104 Wn.2d 1028 (1985), where he argued that his five Oregon convictions should have been counted as one offense in computing his offender score under the SRA since his prison terms for each overlapped. The court stated:

> The Legislature has crafted a plan by which each person sentenced is given an "offender score" according to his prior criminal record. RCW 9.94A.360. The statute takes careful account of each prior felony conviction . . . and assigns weight to them . . . It would be utterly inconsistent with this detailed plan to construe the statute so that a defendant who had committed and been sentenced separately for several serious crimes over a period of years, but who happened to serve overlapping prison terms for them at the same time, would be deemed to

---

[1]RCW 9.94A.360(11) was amended in July 1986. Concurrent sentences for multiple prior convictions may be considered separately or as one offense. Laws of 1986, ch. 257, § 25. If the offenses encompass the same criminal conduct, they shall be considered one offense. *State v. Johnson,* 49 Wn. App. 239, 742 P.2d 178 (1987) deals with the use of concurrent sentences in calculating offender scores. In *Johnson,* the issue is examined under the revised statute. The case sub judice, however, is controlled by the antecedent statute, RCW 9.94A.360(11).

have committed only one offense. We are confident that the Legislature's true intent was to include one offense in criminal history when prior concurrent sentences were *judicially imposed* for more than one offense, regardless of whether the concurrent sentences arose out of the same or separate incidents.

*Hartley,* at 673–74. The court held that Hartley's convictions should be counted separately. Division One approved *Hartley* in *State v. Johnson,* 48 Wn. App. 531, 740 P.2d 337 (1987), and most recently in *State v. Harper,* 50 Wn. App. 578, 749 P.2d 722 (1988).[2]

In *Harper,* the court resolved the issue of what is required of an "express order" or "a judicial imposition" in order for sentences to be construed as concurrent rather than merely overlapping. The court stated:

We believe that in the case of multiple prior convictions what is required for an "express order" or "a judicial imposition" is a manifestation in the record of the exercise of judicial discretion by the sentencing judge indicating the intention to impose concurrent sentences.

*Harper,* at 582.

We conclude that Hartley's 1977, 1980, and 1981 judgments and sentences are consecutive because they occurred in different counties and states, they occurred in separate years, and they were entered before separate sentencing judges. In addition, these convictions were imposed without reference to each other. Consequently, the sentences are not concurrent for purposes of RCW 9.94A.370(1) and the trial court's decision is affirmed in that the court did not

---

[2]In *State v. Binder,* 106 Wn.2d 417, 721 P.2d 967 (1986), the Washington Supreme Court held that the defendant's prior convictions should not have been treated separately under former RCW 9.94A.360(11). The court reached this conclusion based upon the prosecutor's concession on appeal that a previous federal sentence ran concurrently with the defendant's other federal sentences. Consequently, the court did not reach the sentencing question at issue in *Hartley.*

base Hartley's sentence upon an erroneous offender score.[3]

PRO SE ISSUES

In his pro se brief and at his sentencing hearing, Hartley argues that his conviction of first degree burglary in Multnomah County, Oregon, entered on May 31, 1972, was actually an "attempt to till tap," and does not qualify as a burglary according to Washington law. However, the assignment of error raised is unsupported by argument or authority and need not be considered on appeal. *Tennant v. Roys*, 44 Wn. App. 305, 722 P.2d 848 (1986); *State v. Grinier*, 34 Wn. App. 164, 659 P.2d 550 (1983); *State v. Baker*, 48 Wn. App. 222, 226, 738 P.2d 327, *review denied*, 108 Wn.2d 1033 (1987).

Hartley also contends in his pro se brief that he was not given an evidentiary hearing regarding his criminal history. The record shows that a sentencing hearing was held on June 20, 1985, and that Hartley was present, as were the prosecuting attorney and the defense counsel. Despite ample opportunity to request a separate evidentiary hearing, no such request was made. This issue may not be raised for the first time on appeal. RAP 2.5(a); *State v. Smith*, 104 Wn.2d at 507.

---

[3]Under Oregon law, sentences are presumed to be concurrent unless the judge indicates otherwise. Oregon Revised Statute 137.370(4) provides in part:

> Unless the court expressly orders otherwise, a term of imprisonment shall be concurrent with that portion of any sentence previously imposed that remains unexpired at the time the court imposes sentence.

This statute, however, has no bearing on the case at hand because it was not enacted until July of 1981 and did not become effective until November 1, 1981, 90 days after the regular session ended. *See* 1981 Oregon Laws, ch. 424, § 2; 1987 Oregon Laws, ch. 251, § 4; 1987 Oregon Laws, ch. 320, § 35. Hartley's last conviction at issue here was on July 29, 1981.

If the Oregon statute were applicable to the facts of this case, we would have to agree with Hartley's position. Sentences that run concurrently by operation of law must be treated in the same manner as those that are, in a jurisdiction such as the State of Washington, consecutive only if judicially imposed. *See State v. Harper, supra. Cf. State v. Binder, supra* (federal sentences that were at the time of the convictions presumptively concurrent).

## Conclusion

The trial court did not abuse its discretion with regard to the denial of a continuance and *Hartley* remains good law regarding the sentencing issue. We affirm.

WILLIAMS and GROSSE, JJ., concur.